ASHTABULA RAPID TRANSIT CO. v. MAX DAGENBACH, ADMR.

;. EVIDENCE OF NON-EXPERTS AS TO SPEED OF TRAIN.

In an action for wrongful death, the admission of testimony of men accustomed to riding on cars, though not railroad men, as experts, who stated that they were competent to give an opinion as to the speed of a street railway car, was not prejudicial error.

**2. Opinions as to Street Car Life Saving Appliances.**

Witnesses who testify that they are acquainted with street railroads in various cities, and with the character of life guards generally used on cars, are competent to testify from observation and experience that those in general use are adapted to the purpose, and that they are beneficial in the way of saving and protecting life; and also to testify as to the character of the guard used on a particular car and that it had no tendency whatever to preserve or save life.

**3. Special Requests Need not be Given Verbatim.**

It is not necessary, where special requests are presented which are proper, to give such requests *verbatim*; it is sufficient if the propositions contained therein are covered by instructions which embody, in different language, the same instructions.

**4. Verdict not Excessive.**

A verdict of $1,000, in an action for the wrongful death of a boy five years of age, does not clearly indicate passion or prejudice, and is not manifestly excessive within the meaning of the law, especially where evidence tending to prove probable pecuniary loss was erroneously excluded.

Heard on Error.

Laubie, J.

The case of the Ashtabula Rapid Transit Company v. Max Dagenbach, as administrator of the estate of Arthur M. Dagenbach, deceased, is here on error to reverse the judgment of the court below, in an action brought against the Ashtabula Rapid Transit Company, to recover damages for the killing of the decedent, on the line of the road of the company, in the city of Ashtabula.

The decedent was a boy a little over five years of age, and Max Dagenbach, his father, brings the suit as administrator to recover for his wrongful killing.

Objection was made to the admission of certain evidence by the court below in the case.

It seems this boy, with one other boy, was hanging on to a delivery wagon as it left his father's yard; that it passed out to, and crossed the track of the defendant's road, and ahead of another team, which was going in the same direction, and as it proceeded down the street, the little boys dropped off, and the evidence is somewhat conflicting, as to which of the boys went on to the railroad track first. The father of the other boy, who worked in the cigar shop of Max Dagenbach at this point, and who was interested in watching the performance, says that the first boy off was the boy that was killed; that he stepped upon the railroad track, and stood there looking back, to see if his comrade was following, or going to follow, as he supposed, and while there the car came along, and ran over the deceased and killed him.

Other witnesses testified that the boy that was killed was not the first one that passed on to the track ; that another one went across and stood over by the curb on the side of the street; but all say there was nothing in the way at all to interfere with the motorman seeing the boys as the car came down the street. It was on a descending grade, and the car, as the motorman testified, was allowed to drift down.

The testimony of those who might not be called experts, was introduced for the purpose of showing the speed of the car as it passed down the grade. One or more of these were not railroad men, but men who had observed the car and the accident, and they stated that they had been in the habit of riding on such cars, and observing somewhat their speed, and were competent to give an opinion as to the

speed of the car, and they were under the objection of the defendant below, allowed to give their opinion, and generally they stated it was going at the rate of about twenty miles an hour.

We are not prepared to say that the court erred in the admission of that testimony.

It is also alleged as error that the plaintiff below was permitted to show, by those who knew, that life guards were in use generally upon railroads of this character, in front of the motor, for the purpose of endeavoring at least to protect life, where persons were caught upon the track; and they stated that they were acquainted with railroads of this character in the various cities of the state, and knew the character and form of the life guards that were used generally, and knew the character of the life guard that was on this car, or rather that there was none. They were permitted to describe the character of the guards that were used on the roads generally, and the character of the front of this motor-car, and in addition thereto, to testify from their observation and experience that those in general use were available for the purpose, and were beneficial in the way of saving and protecting life, while that which was upon this motor-car had no tendency whatever to preserve or save life as a life guard. They described it as a " V " shaped wooden projection, that stood out a short distance beyond the motor; that it was not really intended as a life guard, and was not and did not operate as such. We cannot say that the court erred in the admission of this testimony. That there was no life-guard was alleged in the petition as a ground for recovery, and we see no reason why the evidence was not admissible.

We pass by all other of the exceptions to evidence that are in this record, without further notice; that we see nothing in the rulings that were erroneous or prejudicial to the defendant below.

There is an exception to the refusal to give request number nine of the defendant below in regard to the measure of damages, which reads as follows : "Nothing in this case can be allowed on account of bereavement, mental suffering or punitive damages; the money value of the decedent to his parents and next of kin is the limit of recovery in this case, if you should reach that question, and the amount must be determined by you from the evidence and not by guess, and in order to recover in this case, it must be shown by the evidence that defendant was guilty of negligence; that that negligence was the direct, proximate and sole cause of the injury, and that the beneficiary or beneficiaries would have received financial aid from the deceased if he had lived, and if no pecuniary loss is proven your verdict must be for defendant."

It is claimed that the court erred in refusing to give this part of it, "and the amount must be determined by you from the evidence and not by guess." The court was not obliged to give this charge in the very language used. All that it was required to do was to give it in substance and effect, and that we are satisfied the court did do.

entitled to recover. It should be no greater amount because the defendant is a corporation than it would be if this action were between two individuals, and it should be in such an amount as in your judgment and good sense will fairly and reasonably compensate the parents and next of kin for the financial injury that they have sustained, by reason of the negligence of the defendant, not exceeding the sum of five thousand dollars. It should be a fair, reasonable and just compensation, proportionate to the pecuniary injury resulting to the parents and next of kin of the decedent from his death, and in determining this, the **reasonable**

expectation of what pecuniary aid the beneficiaries might have received from the decedent had he lived, is a proper subject for your consideration, so far as it is shown by the evidence in the case; but no damages can be given on account of the bereavement and mental suffering or as a solace to the parents and next of kin on account of his death, or as punitive damages. This compensation can be considered by you only as a hard cash transaction.

"You may take into consideration, in determining the amount which he is entitled to recover, the age, sex, health and intelligence of the decedent; the reasonable expectations of pecuniary aid, which the father, mother, brother and sisters might have received from him had he lived, taking into consideration their ages and the uncertainty of life, so far as it is shown by the evidence in the case; unless, gentlemen, you should find that some one, either his parents or the child was guilty as we have suggested to you before, of contributory negligence in the case, which contributed directly and proximately to the injury caused to this decedent. If so, then the amount that you think that one should recover, should be deducted."

We think the court in its general charge covered the whole law of the case, and gave in effect every proposition that was asked in request nine, language that was appropriate to the case.

The jury returned a verdict of a thousand dollars, and this is said to be against the evidence and excessive, this boy, while a healthy boy, having been but a few weeks over five years of age.

It appears from the evidence that the father was a cigar maker, and plaintiff offered to show that boys of ten years of age and upwards were employed in the business. That he expected to use this boy, if he should reach that age, in the business, and this the court excluded upon the objection of the defendant. We think that was a proper matter for the consideration of the jury, as bearing upon the question of whether or not the parent might, in the natural course of events, receive aid from this son and compensation over and above his expenses to his father; but the court excluded it, and generally we think the action of the court in its rulings was more beneficial to the defendant below than prejudicial.

While we might have been better satisfied with a less verdict, we are not prepared to say that it was a verdict that was rendered under prejudice or passion, or that it was clearly excessive within the meaning of the law, which allows a party to take advantage of such a question. We cannot say that this verdict was manifestly wrong, and on the whole the case will have to be affirmed.